## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| ROGER WILLIAM CARD, III, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:14-cv-00830 (VAB) |
| | : | |
| JOSEPH COLEMAN, et al., | : | |
| Defendants. | : | |
| | : | |

## RULING ON PENDING MOTIONS

Plaintiff, Roger William Card, III, has filed a motion seeking an extension of time, a motion seeking leave to amend his complaint, and a motion to file a supplemental complaint. [Doc. Nos. 33, 36, 37].  For the reasons set forth below, the January 23, 2015 "Motion For Leave To File An Amended Complaint," treated as a motion for extension of time, is granted, the March 9, 2015 motion to amend is granted in part and denied in part, and the motion to file a supplemental complaint is denied.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 2014, the Court granted Mr. Card leave to amend to identify further the defendants named in the complaint.  He had identified Dr. Joseph Coleman, Dr. Patel, Dr. Mark A. Frayne, Dr. Gerard Gagne, and Claudia Griffin, L.C.S.W., as defendants.  The complaint included allegations about Mr. Card's mental health treatment at MacDougall Correctional Institution ("MacDougall") and Northern Correctional Institution ("Northern") from January to May 2014.  After reviewing the allegations in the complaint, the Court dismissed the claims against defendant Patel and concluded that the Eighth Amendment claims of deliberate indifference to Mr. Card's mental health needs and the state law claims of intentional and

1

negligent infliction of emotional distress should proceed against defendants Gagne, Frayne, Coleman, and Griffin.

Mr. Card subsequently filed three more motions to amend the complaint.  On January 6, 2015, the Court denied the first two motions to amend and granted the third motion to amend in part.  *See* Doc. No. 31 (the "January 6th Order").  In the third motion for leave to amend, Mr. Card sought leave to add twelve new defendants and to add allegations related to conduct by mental health and custody officials at Northern after his return to that facility on July 17, 2014.

The Court denied Mr. Card leave to add Lieutenants Bouchard and Josefiak, Warden Cournoyer, Deputy Warden Mulligan, Health Administrator Furey, Dr. Wright, and Correctional Officer Iciak as defendants as well as the allegations against those defendants.  The Court granted Mr. Card leave to add Captain Marine, Correctional Officer DeJesus, Nurse Nancy Hill, Nurse Paul Balatka, and Nurse Mosier as defendants.  Because Mr. Card did not attach a proposed amended complaint to his motion, the Court permitted him to file an amended complaint to include allegations regarding the conduct of Dr. Frayne, Captain Marine, Correctional Officer DeJesus, Nurse Nancy Hill, Nurse Paul Balatka, and Nurse Mosier between July 17 and July 19, 2014 at Northern, provided he could allege how each of them were deliberately indifferent to his safety or mental health needs.  The amended complaint had to be filed within twenty days of the Court's ruling.  *See* Doc. No. 31.

A.      **"Motion For Leave To File An Amended Complaint" [Doc. No. 33]**

In response to the January 6th Order, Mr. Card filed a motion dated January 23, 2015, which the Court received on February 3, 2015.  The motion is titled "Motion For Leave To File An Amended Complaint," but rather than seeking leave to amend the complaint, Mr. Card

requests in this motion an extension of time to file the amended complaint that was permitted by

the January 6th Order.  In its January 6th Order, the Court gave Mr. Card until January 26, 2015

to file an amended complaint "that includes allegations against Dr. Frayne, Captain Marine,

Correctional Officer DeJesus, Nurse Nancy Hill, Nurse Paul Balatka, and Nurse Mosier,

provided he can allege how each individual was deliberately indifferent to his safety or mental

health needs."  Doc. No. 31, at .7.  Mr. Card states in his motion that he did not receive a copy of

the January 6th Order until January 20, 2015, due to his intervening transfer from Cheshire

Correctional Institution ("Cheshire") to Garner Correctional Institution ("Garner"), and that the

Court should therefore grant him an extension of time in which to file an amended complaint that

complies with the requirements of the January 6th Order.

The motion includes some facts pertaining to Mr. Card's claims against Correctional

Officer DeJesus, Nurse Nancy Hill, Nurse Paul Balatka, and Nurse Mosier, but does not include

facts as to all defendants against whom he seeks to proceed.  Mr. Card also has not filed a

complete proposed amended complaint with the motion.  On February 24, 2015, Defendants filed

a response to the motion, stating that they had no objection to the Court granting Mr. Card

additional time to file an amended complaint consistent with the January 6th Order, "subject to

the courts [*sic*] initial review pursuant to 28 U.S.C. 1915A(b)."  Doc. No. 34, at 1.

**B.      March Motion to Amend/Correct Complaint [Doc. No. 36]**

On March 10, 2015, the Court received Mr. Card's next "Motion For Leave To File An

Amended Complaint," dated March 9, 2015.  Mr. Card moves for leave to add Correctional

Officer DeJesus, Nurse Nancy Hill, Nurse Lisa Mosier, Nurse Paul Balatka, and Captain Marine

as new defendants and to add additional allegations against defendant Frayne in connection with

incidents that occurred after his transfer back to Northern on July 17, 2014.  In addition to the

allegations against the five new defendants, Mr. Card includes his original allegations against Dr.

Joseph Coleman, Dr. Mark A. Frayne, Dr. Gerard Gagne, and Claudia Griffin, L.C.S.W.

pertaining to his mental health treatment at MacDougall and Northern from January to May

2014.

In this motion, Mr. Card has alleged that, prior to his incarceration in 2013, he had been

treated for mental health issues for over twenty-five years, and that at the time of his

incarceration at MacDougall in August 2013, he was under the care of Dr. Joseph Coleman and

Licensed Clinical Social Worker Claudia Griffin.  Mr. Card further alleges that he complained on

numerous occasions to these defendants about the fact that he felt his prescribed medications

were not effective.  He alleges that he also submitted complaints about not feeling safe, having

insomnia, and feeling anxious, depressed, and paranoid, but the defendants failed to take any

action to treat these symptoms.

Mr. Card also alleges the following facts.  On January 23, 2014, Mr. Card was involved

in an incident during which he violently assaulted another inmate.   The night before the incident,

he had complained to defendant Claudia Griffin that he was on the edge and did not feel safe.

Ms. Griffin told the plaintiff that he would be fine and should practice his meditation exercises.

As a result of the incident, Dr. Coleman transferred Mr. Card to Garner for a mental

health evaluation.  A psychologist evaluated and treated the plaintiff over a ten-day period, at the

conclusion of which, the psychologist cleared Mr. Card to be transferred to Northern to be placed

in the Administrative Segregation Phase Program.

At Northern, Drs. Frayne and Gagne failed to treat Mr. Card's mental health conditions

properly.  He experienced anxiety, headaches, stress, depression, insomnia, fear, and emotional

pain during his confinement at Northern.

On June 30, 2014, prison officials at Northern transferred Mr. Card to Cheshire to continue with the Administrative Segregation Phase Program.  During the second week of July 2014, a psychiatrist and a nurse examined and evaluated Mr. Card and listened to his extensive mental health history.  They prescribed Klonopin to treat his mental illness.  Mr. Card stated that he did not think this medication was a good idea in view of his extensive mental health and medication history.  In response to his concerns, the psychiatrist and nurse informed him that they both felt that Klonopin was the best medication to treat his mental health symptoms.

Mr. Card claims that he subsequently experienced a reaction to the medication which caused him to exhibit odd behavior.  According to prison officials at Cheshire, Mr. Card threatened to assault prison staff.  On July 17, 2014, prison officials at Cheshire transferred Mr. Card back to Northern due to the incident involving his alleged threat to assault staff, an incident Mr. Card does not remember and for which he did not receive a disciplinary report.

Upon his admission to Northern, a psychologist and social worker assessed Mr. Card and placed him in a cell in the medical unit on behavior modification status.   On July 18, 2014, Dr. Frayne removed the plaintiff from behavior modification status, transferred him to general population, and issued an order that the prescription for Klonopin remain in effect.

On July 19, 2014, Mr. Card asked Correctional Officer DeJesus to contact the mental health department because he did not feel well emotionally and needed to speak to someone. Correctional Officer DeJesus subsequently notified the plaintiff that he had contacted the mental health department and that someone would be coming soon.  When mental health staff did not arrive, Mr. Card asked another correctional officer to notify them.  The officer subsequently informed Mr. Card that someone from mental health would visit him.

Later that day, Correctional Officer DeJesus saw Mr. Card ripping up his sheets into strips.  Officer DeJesus told the plaintiff to stop ripping up his sheets, but Mr. Card refused to do so.  Correctional Officer DeJesus left Mr. Card's housing unit and when he returned, Mr. Card was hanging by a noose made out of the ripped up sheets.  Correctional Officer DeJesus signaled the control officer who opened the plaintiff's cell door.  Officer DeJesus saw Mr. Card hanging, but made no attempt to cut the plaintiff down.  Instead, he tried to shut Mr. Card's door manually, which caused it to jam, and then left the housing unit to get other officers.  Because Mr. Card's cell door was jammed, correctional officials were unable to enter the cell right away.  After the door was opened, officers cut Mr. Card down and Nurse Balatka examined and treated him.

Prison officials then transported Mr. Card to an outside hospital for treatment.  Upon his return to Northern, Drs. Frayne and Gagne placed Mr. Card back on behavior observation status and changed his mental health medication.

**C.      Motion for Leave to File Supplemental Complaint [Doc. No. 37]**

On April 14, 2015, the Court received Mr. Card's "Motion For Leave To File A Supplemental-Complaint."  He provides no explanation of what a "supplemental-complaint" is, but merely states that leave to file such a document should be freely given by the Court.

**II.      DISCUSSION**

**A.      "Motion For Leave To File An Amended Complaint" [Doc. No. 33]**

Although it is titled as a "Motion For Leave To File An Amended Complaint," the substance of this motion is actually a request for an extension of time to file an amended complaint in response to the Court's January 6th Order.  Accordingly, the Court will construe

this as a Motion for Extension of Time.[1]  *See Chambers v. U.S.*, 106 F.3d 472, 475 (2d Cir.1997)

(*pro se* petitions should be characterized based on the relief sought, without regard to the label

given to them by *pro se* prisoners unlearned in the law).  Mr. Card has shown good cause why he

should be granted the requested extension.

Due to his transfer to another prison facility, he did not receive a copy of the January 6th

Order with sufficient time for filing an amended complaint by the original deadline.  In addition,

Defendants have no objection to the Court granting Mr. Card additional time to file his amended

complaint, consistent with the Court's January 6th Order.  Therefore, this motion, treated as a

motion for an extension of time to file an amended complaint, is GRANTED.

The Court gives Mr. Card thirty (30) days from the date of this order, July 29, 2015, to

file a complete amended complaint that complies with the requirements set forth in the Court's

January 6th Order.

### B.   March Motion to Amend/Correct Complaint [Doc. No. 36][2]

#### 1.   Correctional Officer DeJesus and Captain Marine

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures

to guarantee the safety of inmates in their custody."  *Hayes v. New York City Dep't of*

*Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33

(1994)).  Thus, "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm

to an inmate violates the Eighth Amendment" and will give rise to a failure to protect claim.

*Farmer*, 511 U.S. at 828.

---

[1]  In addition, the motion has been docketed so as to reflect this understanding of the nature of the relief it seeks.  *See* Doc. No. 33.

[2]  The Court notes that this motion has also been docketed as a motion for leave to file an amended motion for appointment of counsel.  That motion has been addressed in a separate ruling by Magistrate Judge Garfinkel.  *See* Doc. No. 40.

Mr. Card claims that Officer DeJesus failed to take steps to protect him from harm after becoming aware that he needed to see a mental health professional and observed him ripping his sheets into strips, and instead ignored Mr. Card's behavior, failed to monitor him properly, and left him hanging in his cell instead of trying to get him down.  These factual allegations are sufficient to state a plausible claim of deliberate indifference to safety against Officer DeJesus.

Mr. Card alleges that, after the incident during which he attempted to hang himself, Officer DeJesus prepared an Incident Report.  Mr. Card claims that Officer DeJesus included false statements regarding his compliance with prison directives and regulations that governed inmate suicide attempts.  Captain Marine reviewed the Incident Report completed by Officer DeJesus and signed off on it as the supervisor of Officer DeJesus.  Mr. Card claims that Captain Marine erred in approving the Incident Report.

Mr. Card has not alleged that Captain Marine violated his federal or constitutionally protected rights.  There are no allegations that Captain Marine was aware of Mr. Card's mental health condition or that he failed to protect the plaintiff from harm or was deliberately indifferent to Mr. Card's medical needs.  To the extent that Captain Marine failed to correct the alleged deficiencies in the Incident Report prepared by Officer DeJesus, those allegations fail to state a violation of federal law.  Accordingly, the Court will not permit Mr. Card to add Captain Marine as a defendant.

Thus, the motion to amend is GRANTED, to the extent that Mr. Card seeks to add Officer DeJesus as a defendant, but DENIED, to the extent that Mr. Card seeks to add Captain Marine as a defendant.

### 2.    Nurses Hill, Balatka, and Mosier

Deliberate indifference by prison officials to a prisoner's serious medical or mental health

needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See*

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Jarecke v. Hensley*, 552 F. Supp. 2d 261, 264 (D.

Conn 2008).  To prevail on such a claim, a plaintiff must provide evidence of sufficiently

harmful acts or omissions. *See Estelle*, 429 U.S. at 104-06.  Mere negligence will not support a

Section 1983 claim. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Eighth

Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state

tort law").

　　Mr. Card alleges that Nurse Mosier refused to come to his cell to assess him after

correctional staff notified her on several occasions that he did not feel well and needed to speak

with mental health staff.  As a result, Mr. Card later engaged in self-destructive behavior.  In

addition, Nurse Mosier did not immediately respond to the emergency code called by prison

staff, after they found Mr. Card hanging in his cell.  Mr. Card thus has stated a plausible claim of

deliberate indifference to a serious mental health need. *See Estelle*, 429 U.S. at 104-05

(deliberate indifference may be shown by evidence of prison personnel "intentionally denying or

delaying access to medical care or intentionally interfering with treatment once prescribed").

Therefore, this motion to amend is GRANTED, to the extent that Mr. Card seeks to add Nurse

Mosier as a defendant.

　　Mr. Card alleges that, after he attempted to hang himself, Nurse Balatka responded and

offered medical treatment.  Mr. Card has not alleged that Nurse Balatka was indifferent to his

medical needs.   Therefore, he has not stated an Eighth Amendment claim against Nurse Balatka.

　　Mr. Card alleges that Nurse Hill was on duty on July 19, 2014.  The fact that Nurse Hill

may have been on duty in the medical department on July 19, 2014, when Mr. Card attempted to

hang himself, fails to state a claim that Nurse Hill intended to delay or deny medical treatment to

Mr. Card deliberately. *See Farmer*, 511 U.S. at 837 (deliberate indifference requires that a prison official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"). Thus, Mr. Card has not alleged that Nurse Hill was deliberately indifferent to his medical needs. Because Mr. Card has not alleged that either Nurse Hill or Nurse Balatka violated his Eighth Amendment rights, the Court will not permit him to add them as defendants.

Therefore, the March motion to amend is GRANTED, to the extent that Mr. Card seeks to add Nurse Lisa Mosier as a defendant relating to the incidents that occurred at Northern between July 17 and July 19, 2014, and DENIED, to the extent that he seeks to add Nurses Balatka and Hill as defendants.

### 3.     Doctor Frayne

Mr. Card seeks leave to add allegations regarding mental health treatment that he received from defendant Frayne at Northern from July 17 through July 19, 2014. Mr. Card claims that upon his transfer to Northern on July 17, 2014, defendant Frayne continued to prescribe a mental health medication that had caused him to engage in destructive behavior at Cheshire. In addition, Dr. Frayne took Mr. Card off of behavior observation status before he was ready to return to general population. Mr. Card claims that this conduct constituted deliberate indifference to his mental health needs.

The Court previously granted Mr. Card leave to add these allegations. *See* Doc. No. 31. Mr. Card may therefore add allegations regarding the mental health treatment provided by defendant Frayne from July 17 to July 19, 2014 at Northern.

**C.       Motion for Leave to File Supplemental Complaint [Doc. No. 37]** [3]

Mr. Card simply states that he seeks leave to file a supplemental complaint and that leave

should be freely granted by the Court.  Mr. Card provides no basis on which to grant him leave

to file a supplemental complaint.  Accordingly, the motion is denied.

**III.      CONCLUSION**

The January 23, 2015 "Motion For Leave To File An Amended Complaint," treated as a

Motion for Extension of Time, [**Doc. No. 33**] is **GRANTED**, and Mr. Card may have an

extension until July 29, 2015 to file a complete amended complaint in accordance with the terms

of the Court's January 6th Order [Doc. No. 31].  The March "Motion For Leave To File An

Amended Complaint" [**Doc. No. 36**] is **GRANTED** in part and **DENIED** in part.  Mr. Card may

add Correctional Officer DeJesus and Nurse Lisa Mosier as defendants, as well as allegations

against them and the new allegations against defendant Frayne pertaining to his involvement in

incidents that occurred at Northern between July 17 and July 19, 2014, but is **NOT** permitted to

add Nurse Balatka, Nurse Hill, or Captain Marine as defendants.  The Motion for Leave to File a

Supplemental Complaint [**Doc. No. 37**] is **DENIED** for lack of good cause shown.

**Within THIRTY DAYS of the date of this order, July 29, 2015, Mr. Card may file**

**ONE complete amended complaint including the original allegations against Dr. Joseph**

**Coleman, Dr. Mark A. Frayne, Dr. Gerard Gagne, and Claudia Griffin, L.C.S.W.**

**pertaining to his mental health treatment at MacDougall and Northern from January to**

**May 2014 as well as the new allegations regarding the deliberate indifference to safety and**

---

[3]   The Court notes that this motion has also been docketed as a motion for leave to file a
supplemental motion for appointment of counsel.  That motion has been addressed in a separate
ruling by Magistrate Judge Garfinkel.  *See* Doc. No. 40.

**mental health needs by Dr. Frayne, Correctional Officer DeJesus, and Nurse Mosier**

**during the time period from July 17 through July 19, 2014 at Northern.**

Mr. Card is on notice that Correctional Officer DeJesus and Nurse Lisa Mosier will **NOT**

be added as defendants until he files his amended complaint in compliance with this Ruling.  If

Mr. Card chooses NOT to file an amended complaint within the time specified, the case will

proceed **ONLY** as to the claims contained in the complaint against defendants Coleman, Gagne,

Griffin, and Frayne.

**In addition to mailing the Plaintiff a copy of this Ruling, the Clerk shall also mail**

**the Plaintiff an Amended Complaint form.**

SO ORDERED this 29th day of June, 2015, at Bridgeport, Connecticut.

 /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

12